# IN THE COURT OF APPEALS OF IOWA

No. 21-1393
Filed July 20, 2022

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JEAN LYNN LILLIE,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Woodbury County, Mark C. Cord,

District Associate Judge.


        A defendant appeals her conviction for assault with a dangerous weapon,

an aggravated misdemeanor, in violation of Iowa Code section 708.2(3) (2020).

**AFFIRMED.**


        Denise M. Gonyea of McKelvie Law Office, Grinnell, for appellant.

        Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney

General, for appellee.


        Considered by May, P.J., and Greer and Chicchelly, JJ.

**CHICCHELLY, Judge.**

Jean Lynn Lillie appeals her conviction for assault with a dangerous weapon, an aggravated misdemeanor, in violation of Iowa Code section 708.2(3) (2020). Lillie advances a variety of constitutional, procedural, and other substantive claims on appeal. Finding no reversible error, we affirm the conviction.

## I. Background Facts and Proceedings.

On March 30, 2020, Kurt Paulsen drove to his family's farm in Woodbury County. That farm was across the street from Lillie's home. Lillie had been hostile toward the Paulsen family for several years—having frequently yelled at them, called them "welfare rats," and sent strange letters. Two of Paulsen's friends—Troy and Lindsey Widman—accompanied him on the day in question to help retrieve a dumpster. The Widmans followed closely behind Paulsen in their own vehicle. Upon their arrival, Paulsen observed Lillie running around her yard and heard her screaming that they were "a bunch of f-ing welfare rats" and that she was going to put them in prison. Neither Paulsen nor the Widmans engaged with Lillie. Paulsen testified about what happened when he began to drive away: "I looked over and I see Jean Lillie in the front yard. And I thought, 'Oh, she's got a gun.' I thought it was a toy. And then the smoke and the fire came out the end of it, and she shot right at me."

Deputies executed a search warrant on Lillie's home and found a fired shotgun shell and waddings on the ground near the edge of her property. They also uncovered a shotgun inside a couch in her house. Lillie claimed that she was firing her shotgun at varmints rather than at Paulsen. Paulsen testified that he did

not see any animals nearby. Lillie admitted seeing people on the Paulsen property and calling them "welfare rats." Lillie filed a timely appeal after her conviction.

Additional facts will be discussed as relevant.

## II. Discussion.

### A. Late Amendment to Minutes of Testimony—Additional Witnesses.

Lillie argues her due process rights were violated when the district court allowed the State to amend its minutes of testimony less than two days prior to trial in order to add witnesses not previously listed. Although Lillie contends constitutional due process rights are invoked, she fails to cite authority in this regard. *See* Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue."). Moreover, "we review the trial court's decision not to exclude a witness for lack of a timely notice for an abuse of discretion." *State v. Wiese*, No. 12-1639, 2013 WL 5760972, at *2 (Iowa Ct. App. Oct. 23, 2013) (citing *State v. LeGrand*, 501 N.W.2d 59, 62 (Iowa Ct. App. 1993)).

Iowa Rule of Criminal Procedure 2.19(3) provides that the court may exclude the testimony of prosecution witnesses added less than ten days before trial "if it finds that no less severe remedy is adequate to protect the defendant from undue prejudice." Here, the State attempted to add three law enforcement witnesses two days prior to trial. The court approved only two of the witnesses and limited the scope of their testimony to laying foundation for specific exhibits that had been timely disclosed to the defense. Lillie claims she was prejudiced because she was not afforded the opportunity to depose these new witnesses, but she never requested a continuance or recess to conduct depositions.

The defense acknowledged receipt of the exhibits and should not have been surprised by foundational testimony. Because the limited scope was an adequate and less-severe remedy, we find no abuse of discretion or undue prejudice caused by the trial court's decision to allow foundational testimony for anticipated exhibits from the late-addition witnesses. *See State v. Ball*, No. 17-1332, 2018 WL 3471604, at *6 (Iowa Ct. App. July 18, 2018) (finding no abuse of discretion when the anticipated testimony of a late witness should not have surprised the defendant, no request was made to depose the new witness, and the court limited the scope of testimony permitted).

### B. Juror Challenge for Cause.

Lillie asserts the trial court erred in overruling her challenge to strike Juror #25 for cause. During voir dire, Juror #25 shared that Troy Widman, a civilian witness for the State, is his mother's cousin. Juror #25 stated that he did not recall ever speaking to Troy but believed his mother spoke with him occasionally. After questioning, the district court concluded that the distant relationship would not impact the juror's ability to be fair and impartial and overruled Lillie's challenge. On appeal, "[w]e review the district court's rulings on challenges to potential jurors for cause for abuse of discretion. The district court is vested with broad discretion in such rulings." *State v. Jonas*, 904 N.W.2d 566, 570 (Iowa 2017) (internal citations omitted).

To grant Lillie the reversal she requests, we must not only find that the district court erred in denying the challenge for cause but also that Lillie was prejudiced by the improper denial. *See id.* at 583. As the State points out, Lillie cannot prove prejudice on the facts alleged. Prejudice is presumed when (1) the

district court improperly refuses to disqualify the juror in question, (2) the defendant is thereby forced to expend a peremptory challenge, and (3) the defendant requests, and is denied, an additional peremptory strike upon exhausting those afforded under Iowa Rule of Criminal Procedure 2.18(9). *See id.* Because Lillie did not request an additional peremptory strike, the prejudice test set forth in *State v. Neuendorf*, 509 N.W.2d 743 (Iowa 1993), would apply. *See Jonas*, 904 N.W.2d at 583.

Even so, *Neuendorf* "does not allow defendants to bypass the opportunity to exercise a peremptory strike, leave a juror they considered to be partial on the panel, and then claim prejudice on appeal." *State v. McCunn*, No. 19-1649, 2022 WL 468736, at *8 (Iowa Ct. App. Feb. 16, 2022). Lillie did exactly that. After her challenge to Juror #25 was overruled, Lillie chose not to exercise any of her peremptory strikes on Juror #25 and thereby allowed him to serve on the jury. Lillie "cannot profit from the self-inflicted prejudice of leaving [Juror #25] on the jury." *Id.* at *9.

Moreover, we find no abuse of discretion in the underlying district court decision to overrule Lillie's challenge. Lillie argues Juror #25 could not be fair and impartial given his connection with the witness. *See* Iowa R. Crim. P. 2.18(5)(k) (providing that a prospective juror may be struck for cause if the individual had "formed or expressed such an opinion as to the guilt or innocence of the defendant as would prevent the juror from rendering a true verdict upon the evidence submitted"). The record does not reflect that Juror #25 indicated any inability to be fair and impartial or that he did anything more than acknowledge a familial relationship. "The mere fact a juror has knowledge of parties or witnesses does

not indicate actual bias or require juror disqualification." *State v. Webster*, 865 N.W.2d 223, 238–39 (Iowa 2015). On this record, the district court did not abuse its discretion in overruling the motion to strike Juror #25 for cause.

*C. Sequestration Violation.*

Lillie contends the district court erred in denying her motion for mistrial due to the States' witnesses' violation of the court's sequestration order. After his testimony was completed, Paulsen conversed with Troy and Lindsey Widman—witnesses for the State whose testimony had not yet begun—in the hallway of the courthouse. The witnesses admitted to conversing briefly—for perhaps five minutes—regarding how Paulsen's testimony went and where to find food. Paulsen's comments were apparently directed at the prosecutor, who was party to the conversation as well. Paulsen shared that he felt counsel tried to trip him up about trees and his view of Lillie during the incident. In response, the court prohibited the State from making any testimonial inquiry of either Troy or Lindsey Widman regarding the subject matter discussed, including their personal observations concerning tree placement, sight lines, and how Lillie allegedly held the shot gun.

We review a district court's ruling on the violation of sequestration orders for abuse of discretion. *See State v. Don*, 318 N.W.2d 801, 806 (Iowa 1982).

> The purpose of an order of exclusion is "to lessen the danger of perjury, or at least of a suggestion to following witnesses of what their testimony should be to correspond with that previously given; to put each witness on his own knowledge of the facts to which he testifies rather than to have his memory refreshed, even guided, and his testimony colored by what has gone before."

*State v. Pierce*, 287 N.W.2d 570, 574 (Iowa 1980) (quoting *In re Will of Smith*, 60 N.W.2d 866, 869 (Iowa 1953)). "In the absence of prejudice we cannot say that a reversal is required." *State v. Sharkey*, 311 N.W.2d 68, 70 (Iowa 1981). "Iowa courts do not presume prejudice in cases of a sequestration error." *State v. Griffin*, No. 10-1104, 2011 WL 2420788, at *4 (Iowa Ct. App. June 15, 2011) (collecting cases).

Here, the trial court provided a limited remedy by narrowing the scope of the Widmans' testimony. Counsel had the opportunity to use Troy and Lindsey's depositions from one year prior to impeach their testimony if it would have varied. In its ruling denying Lillie's motion for a new trial, the court observed that "[n]o evidence was presented during trial that revealed any testimonial impact based upon the interaction between the defendant and the witnesses during trial recess." We find "[t]he record does not suggest that the State's witnesses engaged in collusion or that any witness was influenced in his testimony by the testimony of other witnesses." *Sharkey*, 311 N.W.2d at 70. Therefore, we conclude the district court did not abuse its discretion in ruling on the sequestration violation.

### D. Sufficiency of the Evidence.

Lillie alleges the evidence was insufficient to establish a prima facie case against her and therefore should have resulted in a judgment of acquittal. Challenges to the sufficiency of the evidence are exempt from normal error preservation rules and reviewed on appeal for correction of errors at law. *State v. Crawford*, 972 N.W.2d 189, 202 (Iowa 2022). We will uphold the verdict if it is supported by substantial evidence. *Id.* "Substantial evidence is evidence sufficient to convince a rational trier of fact the defendant is guilty beyond a reasonable

doubt." *Id.* "[W]e view the evidence in the light most favorable to the State, including all legitimate inferences and presumptions which may be fairly and reasonably deduced from the evidence in the record." *State v. Thornton*, 498 N.W.2d 670, 673 (Iowa 1993).

Lillie's claim hinges on the distance between her and Paulsen. She alleges the State could not prove she "displayed" a firearm in a "threatening" manner—as set forth in the jury instructions—because the witness was approximately 200 feet away when she allegedly pointed and shot the gun at him. However, Paulsen testified to his direct observations on this fact, which were corroborated by circumstantial evidence in the Widmans' testimony. "Generally, direct eyewitness testimony establishing the elements of the crime are sufficient to generate a jury question." *State v. Asbury*, No. 17-0117, 2018 WL 4635683, at *4 (Iowa Ct. App. Sept. 26, 2018). "The jury is free to believe or disbelieve any testimony as it chooses and to give weight to the evidence as in its judgment such evidence should receive." *Thornton*, 498 N.W.2d at 673. "A jury's assessment of credibility may only be ignored on appeal when the testimony is so impossible, absurd, and self-contradictory that it may be deemed a nullity." *State v. Speaks*, 576 N.W.2d 629, 632 (Iowa Ct. App. 1998). Because the testimony at issue does not rise to such levels, we conclude there was substantial evidence for a jury to find the defendant guilty beyond a reasonable doubt.

### E. Juror Language Difficulties.

Lillie argues the district court erred in denying her motion for mistrial due to a juror's difficulty understanding the English language. When the jury was polled after returning a verdict, Juror #15 had some trouble responding. The court

inquired further and ascertained that English was not this juror's first language but was satisfied with her competency and ability to meaningfully partake in deliberations. In its order on Lillie's motion for mistrial, the court explained:

> [A] juror need not have a perfect understanding of every word within the English language in order to render a fair and impartial verdict. This juror does have a base level of competency in the English language.
> No information has been presented by defense counsel that this juror was unduly influenced by the other jurors. The court cannot find any undue influence on this juror by the others.
> Notwithstanding the above, the Court addressed this juror for an extended period of time in chambers in the presence of counsel and on the record. This juror does understand the English language as spoken. It may not be perfect in every regard but she did follow along and understand the court's questions to a reasonable degree. She was able to read aloud the written jury instructions provided to her. She did understand the three option[s] presented when reviewed with her. The court finds she did understand these options as presented during final jury instructions. The court finds that this juror had the necessary understanding of the facts as presented during the trial.

We review motions for mistrial based upon juror misconduct or bias for abuse of discretion. *State v. Hendrickson*, 444 N.W.2d 468, 472 (Iowa 1989). "It is well settled that known objections, or those which may be ascertained, are waived if no challenge is made before the jury is sworn." *State v. Grove*, 171 N.W.2d 519, 520 (Iowa 1969). A challenge involving a juror's language proficiency could have been ascertained during voir dire. *See State v. Fuentes*, No. 03-0426, 2004 WL 1854103, at *3 (Iowa Ct. App. July 28, 2004) (affirming the denial of a motion for mistrial based on a juror's difficulty reading English). Therefore, the district court did not abuse its discretion in denying Lillie's motion for mistrial.

*F. Speedy Trial Violation.*

Lillie alleges the delay in bringing her to trial violated her constitutional right to a speedy trial and caused her prejudice. The right to a speedy trial under Iowa Rule of Criminal Procedure 2.33(2)(b) means an accused must be brought to trial within ninety days from the filing of trial information. *See State v. Clark*, 351 N.W.2d 532, 534 (Iowa 1984). Trial information was filed against Lillie on April 3, 2020. The Iowa Supreme Court had temporarily suspended jury trials beginning in March 2020 due to the COVID-19 pandemic. Lillie posted cash bond on May 6, 2020, and a jury trial was held in June 2021.

"We review a trial court's ruling on a motion to dismiss based on speedy-trial grounds for an abuse of discretion." *State v. Winters*, 690 N.W.2d 903, 907 (Iowa 2005). Speedy trial violations must result in dismissal "unless the State proves (1) defendant's waiver of speedy trial, (2) delay attributable to the defendant, or (3) 'good cause' for the delay." *Id.* at 908 (citation omitted). "[G]ood cause 'focuses on only one factor: the reason for the delay.'" *Id.* (citation omitted).

Lillie alleges the delay was attributable to the State without good cause and that she never requested a continuance or delay in the litigation. But we find the governmental interest in protecting public health during the pandemic constituted good cause for the suspension of jury trials and the resulting delay of Lillie's trial. *See State v. Watson*, 970 N.W.2d 302, 310 (Iowa 2022) (citing with approval federal cases in which COVID-19 constituted good cause for suspension of jury trials and resulting speedy trial violations). Lillie cites no authority for her contention that the orders suspending trial were supervisory and therefore cannot support good cause. Therefore, we deem this argument waived. *See* Iowa R.

App. P. 6.903(2)(g)(3). Moreover, some delay was attributable to Lillie herself. She requested a continuance twice in 2020 and successfully motioned to continue the trial from its originally-scheduled date in February 2021. Given the State's good cause and Lillie's contribution to the delay, we find no abuse of discretion in connection with the speedy trial violation.

### G. Pretrial Release Bond.

Lillie makes a vague argument that the district court conducted irregular bond proceedings and thereby violated her rights to due process and against cruel and unusual punishment. She does not identify any particular irregularity, relief, or ruling that preserved error. She simply asks that "the Court take into consideration the unusual circumstances of her bond treatment." Lillie bonded out in May 2020 after the district court granted her motion for bond reduction—allowing her to post ten percent ($500) cash of the original bond amount. Without further detail, we find no abuse of discretion properly presented for our review. *See State v. Briggs*, 666 N.W.2d 573, 584 (Iowa 2003) ("Iowa Code section 811.2 vests the determination of the appropriate form of bail in the discretion of the district court.").

### H. Right to Counsel.

Lillie argues her rights to due process and to have an attorney at all material stages of the proceedings were violated due to irregularities in representation in her case. While the constitutional right to counsel triggers de novo review, "[w]e review a district court's ruling on defense counsel's motion to withdraw for an abuse of discretion." *State v. Miller*, No. 20-0359, 2021 WL 4302693, at *2 (Iowa Ct. App. Sept. 22, 2021). The only ruling Lillie identifies to advance this claim is the district court's order granting her request to allow withdrawal of appointed

counsel twenty days before trial. However, a defendant cannot allege reversible error occurred by the granting of her own motion. *See Jasper v. State*, 477 N.W.2d 852, 856 (Iowa 1991) ("[Defendant] cannot deliberately act so as to invite error and then object because the court has accepted the invitation."). Given the dearth of further advocacy, "we will not speculate on the arguments [the litigant] might have made and then search for legal authority and comb the record for facts to support such arguments." *Hyler v. Garner*, 548 N.W.2d 864, 876 (Iowa 1996).

### III.    Disposition.

Having carefully considered each argument, we find no reversible error and affirm Lillie's conviction.

**AFFIRMED.**