# IN THE COURT OF APPEALS OF IOWA

No. 23-1366
Filed August 7, 2024

**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**CHRISTOPHER WILLIAM JOHN DUBOIS,**
      Defendant-Appellant.
_____

      Appeal from the Iowa District Court for Black Hawk County, Linda M. Fangman, Judge.

      Defendant appeals his convictions for burglary in the first degree and domestic abuse assault causing bodily injury. **AFFIRMED.**

      Austin Jungblut of Parrish Kruidenier L.L.P., Des Moines, for appellant.

      Brenna Bird, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

      Considered by Tabor, P.J., and Greer and Schumacher, JJ.

**SCHUMACHER, Judge.**

Christopher DuBois appeals his convictions for burglary in the first degree, a class "B" felony, and domestic abuse assault causing bodily injury, a serious misdemeanor. In this single-issue appeal, DuBois argues the district court improperly admitted evidence of prior bad acts.

## I.      Background Facts and Prior Proceedings

"He was choking me. He pulled out my hair. I remember having a bloody nose." The victim of the offense, DuBois's ex-girlfriend, testified at a jury trial about the actions of DuBois. Around 5:00 a.m. on March 1, 2023, DuBois appeared at the home of his ex-girlfriend, despite a no contact order that prevented DuBois from being at the home. The ex-girlfriend's nine-year-old son was awake playing video games. Two other children were asleep in the home. DuBois entered the home and immediately grabbed his ex-girlfriend by the neck. The commotion got the attention of the family's German Shepard, which bit DuBois and scared him off. The nine-year old witnessed the assault.

DuBois was arrested and charged with first-degree burglary and domestic abuse assault causing bodily injury. DuBois asserted that he and his ex-girlfriend were "having a conversation" on her doorstep that morning when she ordered her dog to attack him. He denied assaulting his ex-girlfriend.

At trial, his ex-girlfriend testified to the events of March 1. But in response to a question from the prosecutor, she also spoke about prior domestic violence by DuBois. DuBois's counsel objected after the prosecutor asked several more questions.

DuBois was convicted as charged. He was sentenced to indeterminate terms of incarceration not to exceed twenty-five years for first-degree burglary and one year for domestic abuse assault causing bodily injury. DuBois appeals.

## II. Standard of Review

We review the district court's evidentiary decisions for abuse of discretion. *State v. Thoren*, 970 N.W.2d 611, 620 (Iowa 2022). "An abuse of discretion occurs when the trial court exercises its discretion 'on grounds or for reasons clearly untenable or to an extent clearly unreasonable.'" *State v. Rodriquez*, 636 N.W.2d 234, 239 (Iowa 2001) (quoting *State v. Maghee*, 573 N.W.2d 1, 5 (Iowa 1997)).

## III. Prior Bad Acts

DuBois argues the district court improperly allowed the admission of prior bad act evidence related to a previous incident of domestic abuse by DuBois against his ex-girlfriend.

### a. Preservation of Error

The State contests error preservation as to a portion of the prior bad acts evidence, as DuBois failed to issue a timely objection to the introduction of some of the evidence at trial. "Objections to evidence must be raised at the earliest time the alleged ground becomes apparent." *State v. Sharkey*, 311 N.W.2d 68, 71 (Iowa 1981). But if "an objection is late and follows the answer, a motion to strike and an application to have the objection precede the answer, or an excuse for the tardy objection, must be made in order for the objection to preserve error." *Id.* In this case, the objection came after the disputed testimony had already begun:

> Q. Did Mr. Dubois ever physically harm you? A. Yes.
> Q. When did that first occur? A. There was a time—this is gonna be hard. But there was a time when I was pregnant we were

fighting. I got tossed on the ground. But as being pregnant and emotional, I thought it was my fault, so it was never reported.

Q. Did he ever physically harm you while you lived at your new trailer home? A. Yes.

Q. Can you describe what happened? A. The first incident he—it was on October 10th. He was very mad. I had an adult toy that I got out of the garbage that he threw away. He—he was angry over that, and I don't understand why.

[DuBois's Counsel]: Your Honor, may I approach?

. . . .

Your Honor, I just wanted my objection noted for the record.

Counsel and the court engaged in a sidebar conversation later formalized on the record by the court:

COURT: Our first sidebar was at [defense counsel's] request. We went out. [Defense counsel] was concerned about the testimony regarding the past domestic violence. The objection seemed to be that, A, they were talking about past history of domestic violence; and B, he said he was also concerned that the date of that domestic violence was given.

The Court overruled that and relies on *State v. Taylor*, 689 N.W.2d 116. That's a 2004 case. There's also a number of other cases—*State v. Newell*, *State v. Rodriquez*—that allow the prior domestic relationship to come in.

Of significance, the testimony primarily talked about the events leading up to that event, and then she said he assaulted me. We didn't go into great detail about the assault, and then we moved on.

The State argues that because DuBois's objection came after the witness's testimony about "being tossed to the ground," the objection was too late to preserve error as to that specific prior bad act evidence. The State does not contest error preservation on testimony about an October 2022 incident. While there may be merit to the State's assertion regarding the first incident, we choose to bypass the error-preservation issue and address the claim on its merits. *See State v. Taylor*, 596 N.W.2d 55, 56 (Iowa 1999).

b.  Admission of Prior Bad Acts Evidence

Under Iowa Rule of Evidence 5.404(b)(1), "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, "[t]his evidence may be admissible for another purpose such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Iowa R. Evid. 5.404(b)(2).

DuBois argues the court improperly admitted testimony by his ex-girlfriend as to prior instances of domestic violence by DuBois.  The State argues the evidence was properly admitted to show intent or motive.  To determine whether prior bad act evidence can be admitted, the court should consider the following:

> (1) "the evidence must be relevant and material to a legitimate issue in the case other than a general propensity to commit wrongful acts"; (2) "there must be clear proof the individual against whom the evidence is offered committed the bad act or crime"; and (3) if the first two prongs are satisfied, "the court must then decide if [the evidence's] probative value is substantially outweighed by the danger of unfair prejudice to the defendant."

*State v. Richards*, 879 N.W.2d 140, 145 (Iowa 2016) (alteration in original) (quoting *State v. Sullivan*, 679 N.W.2d 19, 25 (Iowa 2004)).

Our supreme court has determined that, in a domestic violence case, evidence of prior instances of domestic abuse can be admitted to show intent or motive.  *State v. Taylor*, 689 N.W.2d 116, 125–28 (Iowa 2004) ("The defendant's prior acts of violence toward his wife, while certainly illustrative of a propensity to use violence, also reflect his emotional relationship with his wife, which as our discussion shows, is a circumstance relevant to his motive and intent on the day in question.").

In examining the admission of this evidence, we highlight the crimes DuBois was charged with, including first-degree burglary. Iowa Code section 713.1 (2023) defines burglary:

> Any person, having the intent to commit a felony, assault or theft therein, who, having no right, license or privilege to do so, enters an occupied structure, such occupied structure not being open to the public, or who remains therein after it is closed to the public or after the person's right, license or privilege to be there has expired, or any person having such intent who breaks an occupied structure, commits burglary.

A crucial element of burglary is intent. *Id.* DuBois denies he arrived at his ex-girlfriend's home that morning with any intent to do harm. DuBois maintains he went there only to have a conversation, and after she let him in the home, she ordered her dog to attack him. He denies any intent to assault her. The prior domestic violence is relevant to show his intent in arriving at her home that morning. *See State v. Newell*, 710 N.W.2d 6, 21 (Iowa 2006) ("We have held the prior relationship between the defendant and the victim, including bad feelings, quarrels, and physical acts, is a circumstance that may be shown to prove the defendant's state of mind and motivation at the time of the crime.").

The history of violence that DuBois inflicted on his ex-girlfriend is relevant to his motive and intent when he showed up at her home at 5:00 a.m. in violation of a no contact order. *See Taylor*, 689 N.W.2d at 125 ("[T]he defendant's prior conduct directed to the victim of a crime, whether loving or violent, reveals the emotional relationship between the defendant and the victim and is highly probative of the defendant's probable motivation and intent in subsequent situations.").

Further, any risk of unfair prejudice does not outweigh the probative value of this evidence. "In evaluating the prejudice factor, we consider the likelihood that the prior-acts evidence will prompt the jury to base its decision on an improper emotional response toward the defendant." *Newell*, 710 N.W.2d at 23. Intent goes to the heart of at least one issue. Further, both DuBois and his ex-girlfriend testified to very different circumstances, and consequently, evidence which clarifies his intent in those circumstances is highly probative. *See Taylor*, 689 N.W.2d at 129.

We conclude that the admission of the prior bad act evidence was not in error as it was introduced for a valid non-propensity purpose. *See* Iowa R. Evid. 5.404(b)(2); *Richards*, 879 N.W.2d at 145.

c. Harmless Error

Even had admission of the prior bad act evidence been in error, it would have been harmless. When a court errs in admitting evidence that should have been excluded, we do not reverse if that error was harmless. *State v. Thoren*, 970 N.W.2d 611, 636 (Iowa 2022). "The test for harmless error 'is whether the rights of the objecting party have been "injuriously affected by the error" or whether the party has "suffered a miscarriage of justice."'" *Id.* (quoting *State v. Parker*, 747 N.W.2d 196, 209 (Iowa 2008)). An error can be harmless when there is overwhelming evidence of the defendant's guilt. *Id.* at 636–37. But unless the record shows otherwise, we presume there has been prejudice. *Id.*

There was overwhelming evidence of DuBois's guilt. The brief statements by his ex-girlfriend on prior instances of domestic violence do not establish prejudice. DuBois's ex-girlfriend testified as the details of events on March 1. Her son, who witnessed the violence, also testified. This testimony and photographic

evidence present an overwhelming case for Dubois's guilt and reduces any prejudicial effect the brief statements on prior violence may have had. *See Rodriquez*, 636 N.W.2d at 244.

**IV. Conclusion**

The admitted evidence of DuBois's previous domestic violence against his ex-girlfriend was relevant to his intent and motive when he arrived at her home. Even absent that evidence, other evidence not objected to by DuBois at trial was overwhelming as to DuBois's guilt. Accordingly, we affirm.

**AFFIRMED.**